IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ONESIMO GARCIA,

    Petitioner,

v.

GARY SWARTHOUT, Warden,

    Respondent.

No. C 10-2050 SBA  (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner Onesimo Garcia's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2007 conviction in the Napa County Superior Court.[1]  For the reasons discussed below, the petition is DENIED.

## BACKGROUND

**I.   Case History**

On May 22, 2007, a second amended information filed in Napa County Superior Court charged Petitioner with murder, two counts of possession of a firearm by a felon, and assault with a firearm.  The information further alleged that Petitioner intentionally discharged a firearm in conjunction with the murder charge and personally used a firearm in conjunction with the murder and assault charges.   2 Court Transcript (CT) 517-19.  On June 18, 2007, a jury trial commenced.  3 CT 664.  On July 9, 2007, the jury found Petitioner guilty of second degree murder, two counts of possession of a firearm by a felon and assault

---

[1] Petitioner initially named J. Adams, warden of Petitioner's former prison, as Respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Gary Swarthout, the warden of California State Prison - Solano, where Petitioner is currently incarcerated, is hereby substituted as Respondent in place of Petitioner's prior custodian.

with a firearm. The jury also found the enhancements to be true. 3 CT 770-74. On August 22, 2007, the trial court sentenced Petitioner to a total term of fifty-four years to life in prison. 3 CT 848-53.

Petitioner appealed to the California Court of Appeal. In an unpublished opinion filed on February 18, 2009, the Court of Appeal affirmed the judgment. Resp's Exh. 2; People v. Garcia, No. A118961, 2009 WL 389725 (Cal. Ct. App. Feb. 18, 2009). On April 29, 2009, the California Supreme Court denied review. Resp's Exh. 4.

On April 30, 2010, Petitioner filed his federal petition for a writ of habeas corpus, raising exhausted and unexhausted claims. Dkt. no. 1. On August 25, 2010, the Court issued an Order for Petitioner to show cause why the petition should not be treated as a mixed petition. Dkt. no. 6. In response, Petitioner filed an amended petition in which he asserted only a claim of jury instruction error, the only exhausted claim. Dkt. nos. 10, 11.

On November 18, 2010, the Court issued an Order to Show Cause why the writ should not be granted on the exhausted claim. Dkt. no. 12. Respondent filed an answer and Petitioner filed a traverse. The matter is now fully briefed and is ready for review on the merits.

## II.  **Statement of Facts**

The following facts are taken from the opinion of the California Court of Appeal:

> Defendant had been dating Sandra Dodson. On July 31, 2005, defendant and Dodson were at a rural home in Napa County, where Dodson rented a room from the homeowner. Also present at the property that day were the homeowner, Bonnie Stanislawski, Dodson's brother-in-law, Porfirio Preciado (who was married to Dodson's sister), and Preciado's two sons, David and Victor (Dodson's nephews). Preciado was there to polish the floors, a job that Dodson had arranged with the homeowner.
>
> While Preciado worked on the floors, his sons and defendant went outside to fire a shotgun at a target. Dodson did laundry. During the target practice, defendant and Dodson got into a loud verbal argument. Dodson was standing near a clothesline, taking wet clothes from a basket and hanging them to dry. Defendant was standing away from the house where he had been firing the shotgun at a target against a tree. Defendant and Dodson yelled back and forth at each other and defendant called Dodson "puta," which is Spanish for whore or slut.
>
> Defendant turned away from the target, raised the shotgun, and fired it at Dodson. The shot from the gun did not strike Dodson but did strike the ground and a trash can or barrel near her. Dodson's nephew David testified that the shotgun pellets came

2

"pretty close" to striking Dodson. Her nephew Victor said the shot came within inches of Dodson. David testified that defendant was angry when defendant shot at Dodson, and that Dodson looked scared. Preciado also saw defendant shoot at Dodson, when he came outside to retrieve a tool from his van. Preciado testified that Dodson turned pale white after she was shot at, and she leaned against the trash can to brace herself. After the shooting incident, Preciado brought his sons inside the house until his work was done and it was time to leave.

As he was preparing to leave, Preciado had a conversation with defendant and Dodson. Preciado mentioned problems he was having with his wife and defendant said that if Dodson did not understand him he would beat her to make her understand. Dodson looked fearful and bowed her head. Preciado left with his sons; Dodson stayed behind with defendant and sadly waved goodbye.

Later that day, Dodson asked her landlady, Stanislawski, for Stanislawski's guns and gun cleaning equipment, saying that defendant wanted to clean the guns. In addition to the shotgun, Stanislawski owned a rifle and a Smith and Wesson .38 caliber revolver. Stanislawski gave the guns to Dodson, and Dodson went into the bedroom with the guns and defendant. Stanislawski testified that she "believe[d]" she removed the cartridges from the handgun before giving it to Dodson and defendant. After giving the guns to Dodson, Stanislawski grew "more and more nervous" and knocked on Dodson's bedroom door to ask if she was okay. Stanislawski knocked on the door and received no reply. Stanislawski returned to her bedroom to watch television but returned again to knock on the door, again receiving no reply. After another interval, Stanislawski again knocked on the door and, this time, Dodson came to the door and said everything was fine.

Stanislawski returned to watching television. Suddenly, Stanislawski heard a loud noise and knew it was the sound of the revolver being fired. Stanislawski rushed into the hall and defendant rushed past her from the direction of Dodson's bedroom and toward the back door. Stanislawski asked "[w]hat happened?" and defendant said "[n]othing." Stanislawski looked into the bedroom and saw Dodson lying in a pool of blood. Dodson was dead.

Defendant fled the premises in his car. He crashed his car through the gate to the property, knocking the gate off its hinges. As he sped down the mountain road leaving the property, he careened into a ravine. Defendant abandoned his crashed car. He was seen that evening making a telephone call from a delicatessen in the area. The police arrested defendant at his home later that same day. Defendant had Dodson's blood on his shirt, pants, and shoes.

An autopsy revealed that Dodson died from a gunshot wound to the face and neck, with the bullet entering below her ear. The autopsy also showed that Dodson had recently injected methamphetamine into her arm, and had a history of injections. A forensic scientist reconstructed the scene of the shooting from the physical evidence, which included the position of Dodson's body, gunpowder markings on Dodson's skin, and blood spatter. The expert opined that Dodson was seated on a stool in front of a vanity and the shooter was standing with the revolver pointed down at Dodson and held within six inches of her face when the gun was fired. At the time she was shot, Dodson appeared to have been administering methamphetamine to herself, as a bag of methamphetamine was found clenched in her left hand and syringes were near her right hand.

The Smith and Wesson revolver was on the bed, along with the rifle and gun cleaning equipment. The gun cleaning equipment was unused: the cleaning rod was not

3

assembled, there was no gun oil on the cotton fabric patches, and the rifle and revolver were dirty. Defendant's fingerprint was on the revolver. The revolver had an expended cartridge case directly below the hammer; there were no other cartridges in the cylinder. The revolver was in proper operating condition.

Two felons testified about jail conversations they had with defendant while he was in jail awaiting trial. One testified that defendant laughed about shooting his girlfriend, and defendant said he killed her because she was going to leave him. The other testified that defendant "bragg[ed]" about shooting his girlfriend and said: " 'If she ain't mine, she's nobody's.' "

The prosecution also presented evidence that Dodson was dating another man in the days leading up to the shooting, and had been with him the day before the shooting. This man testified that he saw bruises on Dodson. On a separate occasion, Dodson told this man that defendant kicked her in the ribs and she thought they were cracked. The autopsy found that Dodson had three fractured ribs in the process of healing.

Garcia, 2009 WL 389725, at *1-3.

## DISCUSSION

**I.      Standard of Review for State Court Decisions**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal habeas court's review of the state court decision is "highly deferential." Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Habeas relief must be denied as long as "fairminded jurists could disagree" on the correctness of the state court's application of the governing legal principle. Id. at 786.

"Clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as

4

of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir. 2003), overruled in part on other grounds by Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claim, the Court looks to the last reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). The Court now reviews the decision of the California Court of Appeal, the highest state court to issue a reasoned opinion on Petitioner's claim.

## II. Legal Claim

Petitioner asserts that his due process rights to a fair trial and to present a defense were violated because the trial court failed to instruct the jury that brandishing a firearm[2] is a lesser included offense to assault with a firearm.

### A. State Court Decision

The California Court of Appeal denied this claim as follows:

> The prosecution charged defendant with assault with a firearm for firing a shotgun at Dodson earlier on the day of her death. (Pen. Code, § 245, subd. (a)(2).) In addition to instructing the jury on assault with a firearm (and simple assault), the defense asked the court to instruct the jury on brandishing a firearm (Pen. Code, § 417, subd. (a)(2)), which defense counsel claimed was a lesser included offense. The prosecutor objected to the requested instruction, and the court denied the defense request upon concluding that brandishing a firearm is not a lesser included offense to assault with a firearm. Defendant renews his claim on appeal that brandishing a firearm is a lesser included offense and should have been submitted to the jury.

---

[2]California Penal Code section 417(a)(2) prohibits the brandishing of a firearm, which is defined as the drawing or exhibiting of any firearm, in the presence of any person, in a rude, angry or threatening manner.

5

> The same claim has been considered, and rejected, many times. (See People v. Steele (2000) 83 Cal. App. 4th 212, 218 [collecting cases].) "An offense is lesser included to a greater offense if the greater offense cannot be committed without also committing the lesser offense." (Id. at 217.) "The determination of whether an offense is lesser included is made from either the wording of the information or the statutory language, and not from the evidence adduced at trial." (Ibid.) Brandishing a firearm is not lesser included to assault with a firearm because, under the statutory elements test, "it is theoretically possible to assault someone with a firearm without exhibiting the firearm in a rude, angry or threatening manner, e.g., firing or pointing it from concealment, or behind the victim's back." (Id. at 218.)
>
> Defendant argues that this long-standing principle that brandishing a firearm is not a lesser included offense to assault with a firearm should be disregarded because the principle conflicts with certain statements of the California Supreme Court that have been made in different contexts. We are unpersuaded, as were previous courts that have addressed the argument at length. (People v. Steele, 83 Cal. App. 4th at 219-221; People v. Escarcega (1974) 43 Cal. App. 3d 391, 398-400.) We agree with these earlier decisions in finding that precedent from both the high court and intermediate court of appeal compel the conclusion that brandishing a firearm is not a lesser included offense to assault with a firearm. The trial court here did not err in refusing the requested instruction.

Garcia, 2009 WL 389725, at *7-8.

### B. Federal Authority

The failure to instruct on a lesser-included offense in a capital case is constitutional error, if there was evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984). Nevertheless, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor, 730 F.2d at 1240). However, a state court's refusal to instruct on an offense that state law does not recognize as lesser included does not violate the constitution. Anderson v. Calderon, 232 F.3d 1053, 1082 (9th Cir. 2000), overruled on other grounds by Osband v. Woodford, 290 F.3d 1036, 1043 (9th Cir. 2002).

A federal criminal defendant is entitled to an instruction on a lesser-included offense if the law and evidence satisfy a two-part test. United States v. Arnt, 474 F.3d 1159, 1163 (9th Cir. 2007). The first prong requires that "the elements of the lesser offense are a subset

6

1 of the elements of the charged offense." Id. *(*quoting Schmuck v. United States, 489 U.S.
2 705, 716 (1989)). In other words, "[w]here the lesser offense requires an element not
3 required for the greater offense, no instruction is to be given . . ." Schmuck, 489 U.S. at 716.
4 The second prong of the test is satisfied if "'the evidence would permit a jury rationally to
5 find [the defendant] guilty of the lesser offense and acquit [him] of the greater.'" Arnt, 474
6 F.3d at 1163 *(*quoting Keeble v. United States, 412 U.S. 205, 208 (1973)).

### C. Analysis

Petitioner's claim fails for the simple reason that no Supreme Court case holds that due process requires a state court to instruct on a lesser included offense in a non-capital case, such as Petitioner's. See Keeble, 412 U.S. at 213 ("we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense"). Although in Beck, 447 U.S. at 638 n.14, the Supreme Court held that a defendant may be entitled to such an instruction in a capital case, it declined to decide whether its holding extended to non-capital cases. Other circuits have held that Beck means that due process requires lesser included offense instructions to be given in non-capital cases, but the Ninth Circuit has declined to do so. See Solis, 219 F.3d at 928-29. Because no Supreme Court precedent controls on the legal issue raised by Petitioner, the state court's denial of this claim is not contrary to, or an unreasonable application of, clearly-established federal law. See Stevenson, 384 F.3d at 1071. For this reason alone, Petitioner's habeas claim must be denied. Furthermore, as discussed below, under California law, brandishing a firearm is not a lesser included offense to assault with a firearm and, for this reason also, the state court's denial of this claim was not unreasonable. See Anderson, 232 F.3d at 1082 (failure of state court to instruct on offense that is not lesser included is not unconstitutional).

Petitioner argues that the determination of whether an offense constitutes a lesser included offense is a state law issue, which a federal habeas court must follow. See Melugin v. Hames, 38 F.3d 1478, 1482 (9th Cir. 1994) (federal habeas court must follow the state courts' interpretation of its own state's laws). Then, citing Briceno v. Scribner, 555 F.3d

7

1069, 1080 (9th Cir. 2009), Petitioner argues that, because only California appellate courts have held that brandishing a firearm is not a lesser included offense to assault with a firearm, this Court must determine how the California Supreme Court would rule on it. Petitioner cites a California Supreme Court case as authority that, if the issue came squarely before the California Supreme Court, it would hold that brandishing a firearm is a lesser included offense of assault with a firearm. Respondent does not dispute that a federal habeas court must accept the state's determination of whether an offense constitutes a lesser included offense, but argues that Petitioner's claim must be denied because California courts have determined that brandishing a firearm is not a lesser included offense of assault with a firearm.

This Court must follow a state court's interpretation of its own laws. See Melugin, 38 F.3d at 1482; Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law."). Under Briceno, "in the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." 555 F.3d at 1080 (citations omitted). Petitioner argues that the California Supreme Court's opinion in People v. Lee, 20 Cal. 4th 47 (1999), provides "convincing reasons to believe that the California Supreme Court would hold that brandishing a firearm is a lesser included offense to assault with a firearm." Memorandum in support of Traverse at 8.

Petitioner's reliance on Lee is misplaced. The issue of whether Lee provides evidence that the California Supreme Court would overrule a long line of appellate cases holding that brandishing a firearm is not a lesser included offense to assault with a firearm was addressed in People v. Steele, 83 Cal. App. 4th 212 (2000), cited by the Court of Appeal in denying Petitioner's claim. The Steele court stated:

> [Lee] does not compel an opposite result. In that case, the defendant was charged with murder by use of a firearm. . . .[T]here was evidence that the defendant meant only to frighten the victim. . . . our Supreme Court held that it was error for the trial court not to have instructed on section 417 as a predicate for the 'misdemeanor manslaughter' theory of involuntary manslaughter, a lesser included offense to murder. . . . However, in the noncapital case before us, an instruction under section

8

> 417 was not being requested as a predicate in order to justify instructing on a different lesser included offense. Rather, the instruction was being sought as the basis for conviction under section 417 itself.

Steele, 83 Cal. App. 4th at 221.

Thus, Lee addressed a misdemeanor manslaughter offense, a lesser included offense to murder. See Lee, 20 Cal. 4th at 60-61. Misdemeanor manslaughter is an unlawful killing without malice in the commission of an unlawful act not amounting to a felony. Id. Because a misdemeanor manslaughter charge requires the defendant to have committed a predicate unlawful act not amounting to a felony, the Court held it was necessary for the defendant to have been charged with the misdemeanor of brandishing a firearm so that he could then have been charged with misdemeanor manslaughter. Lee is inapposite to Petitioner's case because it did not address the issue here; i.e., whether brandishing a firearm is a lesser included offense to assault with a firearm. Id. Moreover, unlike the defendant in Lee, Petitioner did not seek an instruction under section 417 as a predicate to a different lesser included offense, he sought it as the basis for conviction under section 417 itself.

As discussed in Steele, many California appellate opinions have addressed whether the California Supreme Court would hold that brandishing a firearm is a lesser included offense to assault with a firearm and determined that the Supreme Court would not do so. Steele, 83 Cal. App. 4th at 218-21. Petitioner has failed to provide any persuasive reason or authority that the California Supreme Court would rule differently. Furthermore, the conclusion of the appellate courts that, under the statutory elements test, brandishing is not a lesser included offense because it is possible to assault someone with a firearm without exhibiting it in a rude, angry or threatening manner, that is, by firing or pointing it from concealment or from behind the victim, is reasonable. See Schmuck, 489 U.S. at 716 (where the lesser offense requires an element not required for the greater offense, no instruction is to be given). Based on the foregoing, this Court declines to find that the California Supreme Court would deviate from the long line of state appellate cases holding that brandishing a firearm is not a lesser included offense to assault with a firearm. Moreover, Petitioner's claim is denied because this Court must follow state law on the issue of whether

9

an offense constitutes a lesser included offense, and California law firmly holds that brandishing a firearm is not a lesser included offense to assault with a firearm. See Anderson, 232 F.3d at 1082 (not unconstitutional for state court to refuse to instruct on offenses state law does not recognize as lesser included).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Furthermore, no certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. fol. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 9-30-13

SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\HC.10\Garcia 10-2050 HC.dny.rmh.wpd